UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**Meeka Aresaba,**
      **Plaintiff**

      vs.              04-1009

**Rodger Walker, et al.,**
      **Defendants.**

**ORDER**

Before the court is the defendant, Stephen Mote's unopposed summary judgment motion [42].

**Standard**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)*; Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992). Further, this burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). Credibility questions "defeat summary judgment only '[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.'" *Outlaw*, 259 F.3d at 838, *citing* Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56(e)(other citations omitted).

Fed. Rule Civ. Pro. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v.*

*Baker,* 957 F.2d 506, 507-08 (7th Cir. 1992). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, *247-248, 106 S.Ct. 2505, 2510 (1986).

## Background

The Plaintiff, Meeka Aresaba, is a prisoner in the Illinois Department of Corrections. He has brought a lawsuit pursuant to 42 U.S.C. Section 1983. The remaining defendants are Adella Jordan-Luster and Stephen Mote. In his amended complaint, the plaintiff alleges that Defendant Mote violated the Plaintiff's First Amendment rights and the Religious Land Use and Institutionalized Persons Act when he failed to ensure that Plaintiff receive a vegan diet. (Plaintiff's Amended Complaint, p. 2, 5-6, 8). Specifically, Plaintiff alleges that on August 21, 2002, he was transferred to the Pontiac Correctional Center from the Menard Correctional Center. (Plaintiff's Amended Complaint, p. 5). When Plaintiff arrived at Pontiac, he talked to a chaplain who referred him to Defendant Jordan-Luster. (Plaintiff's Amended Complaint, p. 5). On September 14, 2002, Plaintiff filed a grievance concerning his lack of a vegan diet. (Plaintiff's Amended Complaint, p. 5). On April 1, 2003, Plaintiff wrote letters to Defendants Jordan-Luster and Mote concerning Plaintiff's request to be on a vegan diet. (Plaintiff's Amended Complaint, p. 5). Plaintiff, a Rastafarian at the time, claims he needed a vegan diet consisting of organic foods. (Plaintiff's Amended Complaint, p. 6). On April 2, 2003, Defendant Jordan-Luster responded to Plaintiff's April 1, 2003 letter stating that there was no dietary modification listed for the Rastafarian religion. (Plaintiff's Amended Complaint, p. 5). The Plaintiff even attempted changing his religion to African Hebrew Israelite to obtain a vegan diet, however, the request was denied since the change was being requested for other than religious reasons. (Plaintiff's Amended Complaint, p. 6).

## Material Facts Claims to be Undisputed

1. On April 14, 2002, Plaintiff was written a disciplinary report at the Menard Correctional Center for disobeying a direct order, violation of rules, and trading or trafficking. (Exhibit A, Mote Affidavit, ¶ 2).
2. On April 14, 2002, it was observed that Plaintiff gave his vegan religious diet tray to another inmate which was prohibited pursuant to a Chaplain's memorandum. (Exhibit A, Mote Affidavit, ¶ 3).
3. Plaintiff had been told many times to not give his food trays away and Plaintiff let an unknown inmate eat both of his religious vegan diet trays. (Exhibit A, Mote Affidavit, ¶ 3).
4. On April 18, 2002, the Menard Correctional Center's Adjustment Committee found Plaintiff guilty of the April 14, 2002 disciplinary report and recommended discipline of one month C grade. (Exhibit A, Mote Affidavit, ¶ 4).
5. On August 21, 2002, Plaintiff transferred from Menard Correctional Center to the Pontiac Correctional Center. (Exhibit A, Mote Affidavit, ¶ 5).
6. When Plaintiff transferred to the Pontiac Correctional Center he was not on a vegan diet. (Exhibit B, Plaintiff's Deposition, p. 10, l. 9-14).
7. Plaintiff was at the Pontiac Correctional Center until January 15, 2004. (Exhibit A, Mote Affidavit, ¶ 6).

8. The Department of Corrections recognized the Plaintiff as a Rastafarian effective June 15, 2000. (Exhibit A, Mote Affidavit, ¶ 7).
9. Prior to declaring himself to be a Rastafarian in June 2000, Plaintiff's declared religious preference was African Hebrew Israelite. (Exhibit A, Mote Affidavit, ¶ 8).
10. The Department of Corrections has verified that a follower of the African Hebrew Israelite religion has a religious dietary requirement – a vegan diet. (Exhibit A, Mote Affidavit, ¶ 9).
11. Prior to receiving a vegan diet, an inmate must make a request for the diet and provide verification that the inmate's religious beliefs require adherence to a vegan diet. (Exhibit A, Mote Affidavit, ¶ 15).
12. If the Chaplain verifies that an inmate needs a vegan diet for religious purposes, the Chaplain approves the request for a vegan diet and the inmate is placed on a vegan diet. (Exhibit A, Mote Affidavit, ¶ 16).
13. When the Plaintiff arrived at Pontiac Correctional Center, he talked to Chaplain Evan Kennel about obtaining a vegan diet. (Exhibit B, Plaintiff's Deposition, p. 10, l. 15-20).
14. Plaintiff was told that he would have to go through the Head Chaplain of Pontiac Correctional Center to obtain his vegan diet. (Exhibit B, Plaintiff's Deposition).
15. Plaintiff does not remember who the Head Chaplain was at the Pontiac Correctional Center. (Exhibit B, Plaintiff's Deposition, p. 10, l. 15-24; p. 11, l. 1).
16. In 2002, the Assistant Warden of Programs at Pontiac Correctional Center was Adella Jordan-Luster. (Exhibit A, Mote Affidavit, ¶ 10).
17. As the Assistant Warden of Programs, Ms. Jordan-Luster handled issues pertaining to the program areas within Pontiac (i.e. Chaplaincy Department, Health Care Unit, Academic and Vocational School, Clinical services, Record Office, Leisure Time Services, Sex Offender Program, and Substance Abuse Program). (Exhibit A, Mote Affidavit, ¶ 11).
18. During the time frame of Plaintiff's Amended Complaint, i.e. 2002-2003, Ms. Jordan-Luster was also acting as the Head or Chief Chaplain of Pontiac Correctional Center. (Exhibit A, Mote Affidavit, ¶ 12; Exhibit B, Plaintiff's Deposition, p. 15, l. 24; p. 16, l. 1-3).
19. Plaintiff agrees that he had to go through Ms. Jordan-Luster concerning his requests for a vegan diet. (Exhibit B, Plaintiff's Deposition, p. 11, l. 6-12).
20. The Chief Chaplain attempts to familiarize himself or herself with the various religions practiced by the inmates at Pontiac Correctional Center and to advise the Assistant Warden of Programs and other administrators on how to balance the inmates' religious needs with the administrative and security requirements of the facility. (Exhibit A, Mote Affidavit, ¶ 13).
21. Special religious diets are expensive and require additional administrative attention to implement. For example, special outside vendors may be required to supply food items for the diet, contracts for outside vendors have to be approved which require special monetary authorization for purchases from said vendors. Furthermore, depending on the diet to be provided, additional staff may be needed to administer the religious diet to the inmate(s). Additionally, the dietary master menus and budget are established months in advance. Therefore, special religious diets are limited to those inmates who hold a sincere belief and faithfully observe special diets required by those religious beliefs. (Exhibit A, Mote Affidavit, ¶ 14).
22. Ms. Jordan-Luster's Office received letters dated September 1 and 2, 2002 from the

      Plaintiff in which he requested a vegan diet for religious purposes. (Exhibit A, Mote Affidavit, ¶ 17).

23. Ms. Jordan-Luster responded to these letters by sending the Plaintiff a September 5, 2002 memorandum in which she indicated her receipt of the letters and informed him that there is no mandatory dietary requirement for Rastafarians and, as such, his request for a vegan diet was being denied. (Exhibit A, Mote Affidavit, ¶ 18).
24. On September 14, 2002, the Plaintiff wrote a grievance concerning not being placed on a vegan diet and requested to be placed on said diet immediately. (Exhibit A, Mote Affidavit, ¶ 18; Exhibit B, Plaintiff's Deposition, p. 12, l. 1-19).
25. On September 23, 2002, Counselor Williams responded to the Plaintiff's grievance by telling him that he should write to Chaplain Kennell or Assistant Warden Jordan-Luster. (Exhibit A, Mote Affidavit, ¶ 19; Exhibit B, Plaintiff's Deposition, p. 12, l. 14-22).
26. On November 4, 2002, Grievance Officer Sandra Whitaker received the Plaintiff's September 14, 2002 grievance. (Exhibit A, Mote Affidavit, ¶ 21).
27. On November 25, 2002, Grievance Officer Whitaker deemed said grievance to be moot since the Plaintiff was informed to whom to write. (Exhibit A, Mote Affidavit, ¶ 22; Exhibit B, Plaintiff's Deposition, p. 14, l. 10-16).
28. On December 2, 2002, Defendant Mote concurred with the Grievance Officer's recommendation as the Chaplain and/or the Assistant Warden of Programs were better capable of determining the Plaintiff's need for a vegan diet. (Exhibit A, Mote Affidavit, ¶ 23; Exhibit B, Plaintiff's Deposition, p. 14, l. 17-19).
29. On January 2, 2003, the Plaintiff sent Ms. Jordan-Luster a letter in which he stated that Chaplain Kennell had referred the Plaintiff to Ms. Jordan-Luster concerning his request for a vegan diet, and he still wanted the vegan diet. (Exhibit A, Mote Affidavit, ¶ 24).
30. On January 10, 2003, Ms. Jordan-Luster sent the Plaintiff a memorandum denying his request for a vegan diet. (Exhibit A, Mote Affidavit, ¶ 25).
31. A notation added to the Plaintiff's January 2, 2003 letter indicates that Rastafarians followed a vegetarian diet; not a vegan diet. (Exhibit A, Mote Affidavit, ¶ 26).
32. A vegan diet consists of fleshless meals where no kinds of meat or animal products, including dairy products are consumed. (Exhibit A, Mote Affidavit, ¶ 27).
33. A vegetarian diet may include some meals where animal products such as eggs and dairy products are consumed. (Exhibit A, Mote Affidavit, ¶ 28).
34. Plaintiff does not know where Ms. Jordan-Luster got her information about there not being a dietary modification for his religion. (Exhibit B, Plaintiff's Deposition, p. 17, l. 10-21).
35. On January 14, 2003, Plaintiff sent a letter to Ms. Jordan-Luster asking for a form to change his religion to Black Hebrew Israelite. (Exhibit A, Mote Affidavit, ¶ 29).
36. The Department of Corrections has verified that a follower of the Black Hebrew Israelite religion does not have any religious dietary requirement. (Exhibit A, Mote Affidavit, ¶ 30).
37. On January 21, 2003, Ms. Jordan-Luster sent the Plaintiff a memorandum which provided him the form to complete to change his religion. (Exhibit A, Mote Affidavit, ¶ 31).
38. On January 29, 2003, Plaintiff signed a Request for Change of Committed Person's Religious Affiliation form changing his religion from Rastafarian to Black Hebrew Israelite. (Exhibit A, Mote Affidavit, ¶ 32; Exhibit B, Plaintiff's Deposition, p. 15, l. 1-10).
39. Ms. Jordan-Luster denied Plaintiff's Request as she believed the request was being made for other than religious reasons. (Exhibit A, Mote Affidavit, ¶ 33).

40. The Plaintiff sent Defendant Mote's office a letter dated April 1, 2003 in which he stated that he had been trying to obtain a vegan diet and his requests have been denied. (Exhibit A, Mote Affidavit, ¶ 34).
41. Since Plaintiff's letter concerned Chaplaincy issues, Defendant Mote had the letter forwarded to Ms. Jordan-Luster for handling. (Exhibit A, Mote Affidavit, ¶ 35).
42. Ms. Jordan-Luster responded by sending the Plaintiff a memorandum dated April 2, 2003 which denied his request for a vegan diet. (Exhibit A, Mote Affidavit, ¶ 36).
43. On October 17, 2003, Plaintiff sent a letter to Defendant Mote's office asking for a form to change his religion back to African Hebrew Israelite. (Exhibit A, Mote Affidavit, ¶ 37).
44. Since Plaintiff's letter concerned Chaplaincy issues, Defendant Mote had the letter forwarded to the Assistant Warden of Programs Office for handling. (Exhibit A, Mote Affidavit, ¶ 38).
45. On October 20, 2003, Mr. Michael Melvin, Superintendent, sent the Plaintiff a memorandum informing him that he would need to provide verification of his religion. (Exhibit A, Mote Affidavit, ¶ 39).
46. According to the facility's records, no other correspondence was received from the Plaintiff concerning his request for a vegan diet. (Exhibit A, Mote Affidavit, ¶ 40).
47. At no time was Defendant Mote consulted or contacted by Ms. Adella Jordan-Luster, Mr. Melvin, or the Assistant Warden of Programs Office concerning whether the Plaintiff should or should not receive a vegan diet while he was incarcerated at the Pontiac Correctional Center. (Exhibit A, Mote Affidavit, ¶ 41).
48. Nor, was Defendant Mote consulted in how Plaintiff's correspondences should be handled. (Exhibit A, Mote Affidavit, ¶ 42).
49. The decisions Ms. Jordan-Luster made concerning Plaintiff's request for a vegan diet were done on her own accord. (Exhibit A, Mote Affidavit, ¶ 43).
50. A Rastafarian inmate at Pontiac Correctional Center could have practiced his religion in his cell by reading his religious book or other religious materials and praying. Furthermore, if the inmate had made a request through the Chaplaincy Department, the Chaplain could have come to his cell to address the inmate's religious issues or concerns. (Exhibit A, Mote Affidavit, ¶ 44).
51. Plaintiff was receiving meals at Pontiac Correctional Center for breakfast, lunch, and dinner. (Exhibit B, Plaintiff's Deposition, p. 18, l. 14-20).
52. Plaintiff would eat food from the lunch and dinner trays such as potatoes, bread, juice, vegetables, beans and the like. (Exhibit B, Plaintiff's Deposition, p. 21, l. 16-21; p. 22, l. 1-9).
53. Plaintiff claims he lost 15 to 20 pounds at Pontiac Correctional Center but did not see any medical staff concerning same. (Exhibit B, Plaintiff's Deposition, p. 22, l. 10-17).
54. Plaintiff's medical records show that on July 11, 2002, Plaintiff weighed 186 pounds. (Exhibit C, Bruns Affidavit, ¶ 3 p. 1).
55. Plaintiff's medical records show that on January 30, 2003, Plaintiff weighed 183 pounds. (Exhibit C, Bruns Affidavit, ¶ 3 p. 13).
56. Plaintiff's medical records show that on January 15, 2004, Plaintiff weighed 180 pounds. (Exhibit C, Bruns Affidavit, ¶ 3 p. 16).

**Discussion and Conclusion**

The Defendant asserts that in light of the facts claimed to be undisputed, Plaintiff's case, alleging violations of his First Amendment rights and the Religious Land Use and Institutionalized Persons Act fails as a matter of law. The court agrees. The plaintiff has not provided proof that indicates the personal involvement of Defendant Mote in the alleged violations of the plaintiff's constitutional rights. Liability under §1983 requires that there be a direct, personal responsibility on the defendant's part for those acts or omissions claimed to have deprived plaintiff of his rights. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982); *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). To be personally involved, defendants must act (or fail to act) with a deliberate or reckless disregard of plaintiff's constitutional rights or must direct or knowingly consent to the conduct alleged to constitute the violation. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). "Section 1983 will not support a claim based on a *respondeat superior* theory of liability." *Polk County v. Dodson*, 102 S.Ct. 445, 453 (1981). A supervisory official can be liable only for his own misconduct, not that of those under his supervision. *Duckworth v. Franzen*, 780 F.2d 645 (7 Cir. 1985). Thus, a supervisory official must be personally involved in the alleged conduct to be liable. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Defendant Mote asserts that he was not personally involved in the alleged violation of Plaintiff's constitutional rights because he did not participate in the decision process concerning Plaintiff's request for a vegan diet and did not participate in the denial of same. Instead, Plaintiff's requests for a vegan diet were addressed by Defendant Jordan-Luster on her own accord. Defendant Mote's only involvement with Plaintiff concerning the vegan diet was the concurrence with the grievance officer's recommendation about Plaintiff's September 14, 2002 grievance and forwarding the Plaintiff's April 1, 2003 letter, since Plaintiff's letter concerned Chaplaincy issues, to Ms. Jordan-Luster for handling. Defendant Mote concurred with the Grievance Officer's recommendation as the Chaplain and/or the Assistant Warden of Programs were better capable of determining whether or not the Plaintiff needed a vegan diet and if so, ultimately approve the request.

When the Plaintiff arrived at Pontiac Correctional Center, he talked to Chaplain Evan Kennel about obtaining a vegan diet. Plaintiff was told that he would have to go through the Head Chaplain of Pontiac Correctional Center to obtain his vegan diet. During the time frame of Plaintiff's Amended Complaint, 2002- 2003, Ms. Jordan-Luster was also acting as the Head or Chief Chaplain of Pontiac Correctional Center. Therefore, Plaintiff was informed that his vegan diet request would have to be approved by Defendant Jordan-Luster. It was Jordan-Luster who denied the plaintiff's request for a vegan diet, not Defendant Mote. Therefore, since Defendant Mote had no personal involvement in the denial of Plaintiff's request for a vegan diet, summary judgment must be granted in favor of Defendant Mote on this issue.

Ditto on the remaining claim against Defendant Mote. The plaintiff claims Mote denied his request to change his religion. The facts show that on January 14, 2003, the Plaintiff sent a letter to Ms. Jordan-Luster asking for a form to change his religion to Black Hebrew Israelite. On January 21, 2003, Ms. Jordan-Luster sent the Plaintiff a memorandum which provided him the form to complete to change his religion. On January 29, 2003, Plaintiff signed a Request for Change of Committed Person's Religious Affiliation form changing his religion from Rastafarian to Black Hebrew Israelite. Ms. Jordan-Luster, not Defendant Mote, denied Plaintiff's Request as

she believed the request was being made for other than religious reasons.  On October 17, 2003, Plaintiff sent a letter to Defendant Mote's office asking for a form to change his religion back to African Hebrew Israelite.  That letter was forwarded to the Assistant Warden of Programs Office for handling.  On October 20, 2003, Mr. Michael Melvin, Superintendent, sent the Plaintiff a memorandum informing him that he would need to provide verification of his religion.  There is nothing in the record that indicates the Plaintiff provided the required verification of his religion.  Defendant Mote's only involvement with Plaintiff's request to change his religion was to forward the Plaintiff's request to the Assistant Warden of Programs Office so the Plaintiff's request could be handled.  Based on these facts, the court finds that Defendant Mote did not deny the Plaintiff's Request to change his religion and Mote is entitled to summary judgment on this issue.

The court notes that the when the plaintiff filed his amended complaint, filed on August 10, 2004, Defendant Adella Jordan-Luster was added as a defendant.  However, a review of the docket shows there has been no process of service on Jordan-Luster.  The court will address this issue in a separate order.

It is therefore ordered:

1. Pursuant to Fed. R. Civ. Pro. Rule 56(c), Defendant Mote's unopposed summary judgment motion is granted [42].  The clerk of the court is directed to enter judgment in favor of Defendant Mote and against the Plaintiff at the end of this lawsuit.
2. If the plaintiff wishes to appeal this decision, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g). The plaintiff is advised that the appellate filing fee is currently $455.00.

Enter this 15th   day of August 2006.

                                      **s\Harold A. Baker**
                              _____
                                        Harold A. Baker
                                  United States District Judge